## Fogg *v.* Portsmouth Atheneum.

Where a publisher of a newspaper forwards his newspaper weekly, by mail, directed in the usual manner to a party who is not a regular subscriber therefor, and such party takes the newspaper from the post-office, and pays postage therefor, and the publisher forwards his bills through his agents, and demands pay therefor, at the usual times and rates, and the party taking the paper refuses to pay therefor, saying he is not a subscriber, but still continues, after such demand, to receive the newspaper as before, neither returning it nor giving other notice to the publisher, the law will imply in such case a promise to pay by such party, according to the usual terms of such publication; and the action of assumpsit will lie to recover the amount found due within six years from the date of the writ.

Assumpsit, to recover the following account to the writ annexed, namely,

*The Proprietors of the Portsmouth Atheneum :*

To Fogg & Hadley, Dr.

1860, Jan. 1. To the Independent Democrat from vol. 5, No. 1, to vol. 15, No. 35, inclusive,           $21.37

Interest on same,                  12.00

                                         $33.37

Also, to recover the sum of forty dollars, for the paper called the Independent Democrat, for the space of eleven years before the date of the writ, furnished, sold and delivered to the defendants at their request, by the plaintiffs, at two dollars per year, and for interest on money due and owing from the defendants to the plaintiffs before the date of the writ.

The writ was dated July 26, 1861. Plea, the general issue, with the statute of limitations.

The case was submitted to the decision of the court upon the following agreed statement of facts :

The defendants are a corporation whose object is the support of a library and public reading-room, at which latter a large number of newspapers are taken. Some are subscribed and paid for by the defendants; others are placed there gratuitously by the publishers and others; and some are sent there apparently for advertising purposes merely, and of course gratuitously.

The Independent Democrat newspaper was furnished to the defendants, through the mail, by its then publishers, from vol. 3, No. 1 [May 1, 1847]. On the 29th day of November, 1848, a bill for the paper, from vol. 3, No. 1 [May 1, 1847], to vol. 5, No. 1 [May 1, 1849], two years, at $1.50 per year, was presented to the defendants by one T. H. Miller, agent for the then publishers, for payment. The defendants objected that they had never subscribed for the paper, and were not bound to pay for it. They at first refused on that ground to pay for it, but finally paid the bill to said Miller, and took upon the back thereof a receipt in the following words and figures :

Nov. 29, 1848. The within bill paid this day, and the paper is henceforth to be discontinued.     T. H. Miller, for Hood & Co.

Hood & Co. were the publishers of the paper from May 1, 1847, until February 12, 1849, when that firm was dissolved, and the paper was afterward published by the present plaintiffs. The change of publishers was announced, editorially and otherwise, in the paper of February 15, 1849, and the names of the new publishers were conspicuously inserted in each subsequent number of the paper; but it did not appear that the change was actually known to Mr. Hatch, the secretary and treasurer of the corporation, who settled the above named bill, and who continued in the office till January, 1850.

The plaintiffs had no knowledge of the agreement of the agent of Hood & Co. to discontinue the paper, as set forth in the receipt of November 29, 1848, until notified thereof by the defendants, after they had furnished the paper to the defendants for a year or more; the books of Hood & Co., which came into their hands, only showing that the defendants had paid for the paper, in advance, to May 1, 1849.

After the payment of the bill and the giving of the receipt above recited, the paper continued to be regularly forwarded by its publishers, through the mail, to the defendants, from the date of said receipt until May 1, 1849, the expiration of the period named in said bill; and was in like manner forwarded from May 1, 1849, to January 1, 1860, or from vol. 5, No. 1, to vol. 15, No. 35, inclusive, the period claimed to be recovered for in this suit; and was during all that time constantly taken from the post-office by the parties employed by the defendants to take charge of their reading-room, build fires, &c., and placed in their reading-room. Payment was several times demanded during the latter period, of the defendants, by an agent or agents of the plaintiffs; but the defendants refused to pay, on the ground that they were not subscribers for the paper.

Conspicuously printed in each number of the paper sent to and received by the defendants, were the following

"TERMS OF PUBLICATION: By mail, express, or carrier, $1.50 a year, in advance; $2 if not paid within the year. No paper discontinued (except at the option of the publishers) unless all arearages are paid."

The questions arising upon the foregoing case were reserved and assigned to the determination of the whole court.

*Fowler & Chandler*, for the plaintiffs.

*W. H. Rollins*, and *A. R. Hatch*, for the defendants.

NESMITH, J. There is no pretense upon the agreed statement of this case, that the defendants can be charged upon the ground that they were subscribers for the plaintiffs' newspaper, or that they were liable in consequence of the existence of any express contract whatever. But the question now is, have the defendants so conducted as to make themselves liable to pay for the plaintiffs' news-

paper for the six years prior to the date of the plaintiffs' writ, under an implied contract raised by the law and made applicable to this case.

If the seller does in any case what is usual, or what the nature of the case makes convenient and proper to pass the effectual control of the goods from himself to the buyer, this is always a delivery. In like manner, as to the question of acceptance, we must inquire into the intention of the buyer, as evinced by his declarations and acts, the nature of the goods, and the circumstances of the case. If the buyer intend to retain possession of the goods, and manifests this intention by a suitable act, it is an actual acceptance of them; or this intention may be manifested by a great variety of acts in accordance with the varying circumstances of each case.  2 Pars. on Con. 325.

Again, the law will imply an assumpsit, and the owner of goods has been permitted to recover in this form of action, where they have been actually applied, appropriated and converted by the defendant to his own beneficial use.  *Helepen* v. *Campbell*, 2 W. Black. 827; *Johnson* v. *Spiller*, Doug. 167; *Hill* v. *Davis*, 3 N. H. 384, and the cases there cited.

Where there has been such a specific appropriation of the property in question, the property passes, subject to the vendor's lien for the price.  *Robae* v. *Thwaites*, 6 B. & C. 392.  In *Bavin* v. *Jervas*, 7 C. & P. 617, the question was, whether the defendant had purchased and accepted a fire engine.  It was a question of fact for the jury to determine.  Lord *Abinger* told the jury, if the defendant had treated the fire engine as his own, and dealt with it as such, if so, the plaintiff was entitled to recover for its price.  And the jury so found.  2 Greenl. Ev., sec. 108.

In *Weatherby* v. *Bonham*, 5 C. & P. 228, the plaintiff was publisher of a periodical called the Racing Calendar.  It appeared that he had for some years supplied a copy of that work, as fast as the numbers came out, to Mr. Westbrook; Westbrook died in the year 1820; the defendant, Bonham, succeeded to Westbrook's property, and went to live in his house, and there kept an inn.  The plaintiff, not knowing of Westbrook's death, continued to send the numbers of the Calendar, as they were published, by the stage coach, directed to Westbrook.  The plaintiff proved by a servant that they were received by the defendant, and no evidence was given that the defendant had ever offered to return them.  The action was brought to recover the price of the Calendar for the years 1825 and 1826.  Talford, for the defendant, objected that there never was any contract between the plaintiff and the present defendant, and that the plaintiff did not know him.  But Lord *Tenterden* said, if the defendant received the books and used them, I think the action is maintainable.  Where books come addressed to the deceased gentleman whose estate has come to the defendant, and he keeps the books, I think, therefore, he is clearly liable in this form of action, being for goods sold and delivered."

The preceding case is very similar, in many respects, to the case before us.  Agreeably to the defendants' settlement with Hood &

Co., their contract to take their newspaper expired on the 1st of May, 1849. It does not appear that the fact that the paper was then to stop was communicated to the present plaintiffs, who had previously become the proprietors and publishers of the newspaper establishment; having the defendants' name entered on their books, and having for some weeks before that time forwarded numbers of their newspaper, by mail, to the defendants, they, after the first day of May, continued so to do up to January 1, 1860. During this period of time the defendants were occasionally requested, by the plaintiffs' agent, to pay their bill. The answer was, by the defendants, we are not subscribers to your newspaper. But the evidence is, the defendants used, or kept the plaintiffs' books, or newspapers, and never offered to return a number, as they reasonably might have done, if they would have avoided the liability to pay for them. Nor did they ever decline to take the newspapers from the post-office.

If the defendants would have avoided the liability to pay the plaintiffs, they might reasonably have returned the paper to the plaintiffs, or given them notice that they declined to take the paper longer.

We are of the opinion that the defendants have the right to avail themselves of the statute of limitations. Therefore, the plaintiffs can recover no more of their account than is embraced in the six years prior to the date of their writ, and at the sum of $2 per year, with interest, from date of writ, or the date of the earliest demand of the plaintiffs' claim upon the defendants.